# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY KEEL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>A. HEDGPETH, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:08-cv-00242-OWW-WMW PC<br><br>ORDER REQUIRING PLAINTIFF TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 21)<br><br>RESPONSE DUE WITHIN 30 DAYS |

　　　Plaintiff Anthony Keel ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation. The events in Plaintiff's complaint took place while he was incarcerated at Kern Valley State Prison. Plaintiff brings suit under section 1983 for violations of his rights under the Fifth, Eighth and Fourteenth Amendments.

**I.　　Screening Requirement**

　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.     Background

### A.     Procedural Background

Plaintiff's original complaint was filed in the U.S. District Court for the Northern District of California on December 3, 2007 and was transferred to this court on February 19, 2008. Plaintiff subsequently filed three additional motions, (Doc. #10, #11, and #15), which this court construed as a motion to file an amended complaint and granted, (Doc. #16). Plaintiff filed a first amended complaint on February 2, 2009. (Doc. #18). On February 3, 2009, Plaintiff filed a motion seeking to correct his complaint. (Doc. #21). The court will treat Plaintiff's February 3 motion as the operative amended complaint as it is the most recent and complete pleading.

### B.     Factual Background

On August 22, 2007, Defendant S. Wash found an incomplete 602 form, used to file inmate administrative grievances, in Plaintiff's cell. The 602 alleged that Defendant Wash discriminated against Plaintiff because she allowed Hispanic inmates out to work while leaving Plaintiff in his cell. Plaintiff was summoned to Defendant Wash's office and they had a talk.

After the talk with Defendant Wash, Plaintiff was approached by a black inmate who asked Plaintiff why he was writing up Defendant Wash. Plaintiff was then attacked from behind by other inmates and lost consciousness. Plaintiff alleges that Defendant Wash instigated this attack by

giving the 602 form to a "Mexican Shot Caller". (Compl. 3.) When Plaintiff regained consciousness, he saw Defendant Burrows in the gun tower. Plaintiff alleges that Defendant Burrows allowed the inmates who attacked Plaintiff to leave the scene of the attack without stopping them. Plaintiff alleges that Defendant Burrows watched the entire attack take place and did nothing. Further, Defendant Burrows directed medical staff elsewhere to cover-up the attack on Plaintiff.

Plaintiff was interviewed about the attack on August 23, 2007 by Defendant C. Blackstone. Plaintiff asked to see a doctor and was taken to the cage area. A doctor arrived but ignored Plaintiff.

A week after the incident, Plaintiff appeared before a committee chaired by Defendant Chris Chrono regarding a transfer to a different yard. Plaintiff requested a transfer or placement in protective custody because of the incident with Defendants Wash and Burrows. However, Plaintiff was placed in the D-Facility Yard where he was stabbed again by Mexican inmates.

### III. Discussion

#### A. Retaliation Claim

Plaintiff alleges that Defendant S. Wash retaliated against Plaintiff for writing an inmate grievance against her. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that Defendant Wash retaliated against Plaintiff's exercise of protected conduct by instigating the attack against Plaintiff by other inmates. Therefore, Plaintiff states a cognizable claim for retaliation against Defendant Wash.

3

### B. Eighth Amendment Claims

Plaintiff alleges that defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

#### 1. Threats to Safety

Plaintiff alleges that Defendant Burrows violated his Eighth Amendment rights by being deliberately indifferent to threats to Plaintiff's safety. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the

4

inference." Farmer, 511 U.S. at 837.

Plaintiff alleges that Defendant Wash exhibited deliberate indifference toward Plaintiff's safety by setting up an attack against Plaintiff by other inmates. Therefore, Plaintiff states a cognizable claim against Defendant Wash.

Plaintiff alleges that Defendant Burrows was in the gun tower while Plaintiff was attacked by other inmates. Plaintiff alleges that Defendant Burrows witnessed the attack, but did nothing to protect Plaintiff and stop the attack. Therefore, Plaintiff states a cognizable claim against Defendant Burrows for deliberate indifference to threats to his safety.

Plaintiff alleges that he raised his safety concerns to Defendant Chrono during a committee meeting regarding a possible transfer. However, Defendant Chrono did not place Plaintiff in protective custody and Plaintiff was attacked and stabbed after being placed in the D-Facility Yard. Therefore, Plaintiff states a cognizable claim against Defendant Chrono for deliberate indifference to threats to his safety.

### 2. Medical Needs

Plaintiff alleges that Defendant Blackstone and Burrows violated his Eighth Amendment rights by being deliberately indifferent to his medical needs. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quoting Estelle, 429 U.S. at 104). Delay of medical treatment can amount to deliberate indifference. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin, 974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

Plaintiff's claims against Defendants Blackstone and Burrows fails for two reasons. First, as to Defendant Blackstone, Plaintiff alleges that he asked Defendant Blackstone to see a doctor and

Defendant Blackstone ordered Plaintiff to be taken to the cage area to be seen by a doctor. Plaintiff was taken to the cage area and a doctor arrived, but the doctor did not examine Plaintiff. Therefore, it appears that Defendant Blackstone did take steps to get Plaintiff to be seen by a doctor. Plaintiff does not allege that Defendant Blackstone ordered the doctor to ignore Plaintiff, or took any other action to prevent Plaintiff from being seen by the doctor. Secondly, as to both defendants, Plaintiff does not allege that he suffered from a "serious" medical need and that the delay in treatment could have lead to further significant injury or the "unnecessary and wanton infliction of pain". Plaintiff provides no allegations regarding the nature or extent of his injuries. Therefore, Plaintiff has failed to state a cognizable claim against Defendant Blackstone and Burrows for deliberate indifference to his medical needs.

### C.    Fourteenth Amendment Claims

Plaintiff alleges that appeals coordinators violated his rights under the Fourteenth Amendment by denying his appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F.

Supp. 315, 316 (E.D. Mo. 1986).

The actions of defendant appeals coordinators took place after the constitutional violations occurred. At that point, denying Plaintiff's grievances regarding the attack by other inmates did not cause or contribute to the violations. Therefore, Plaintiff fails to state any claims against Defendants Gricewich, Pfeiffer, and Adams.

### D.     Claims Against Defendant Warden Hedgpeth

Plaintiff alleges that Defendant Warden Hedgpeth contributed to the violations of Plaintiff's rights. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has not alleged that Defendant Hedgpeth personally participated in the alleged constitutional violations, knew of the violations and failed to prevent them, or promulgated or implemented a policy that itself is the moving force of the constitutional violations. Plaintiff makes allegations related to a race riot in the prison but provides no allegations on how Defendant Hedpeth was personally involved. Therefore, Plaintiff has failed to allege sufficient facts to hold Defendant Hedgpeth liable under § 1983 for any constitutional violations.

### IV.    Conclusion and Order

Plaintiff's complaint states cognizable claims against Defendants Wash, Burrows, and Chrono for deliberate indifference toward threats to Plaintiff's safety and against Defendant Wash

for retaliation. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff three (3) summonses and three (3) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . .", Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations omitted), meaning Plaintiff must provide enough allegations in his complaint to demonstrate why he is entitled to the relief that he seeks.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,

8

114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Wash, Burrows, and Chrono for deliberate indifference toward threats to Plaintiff's safety and against Defendant Wash for retaliation; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:**    February 9, 2009          /s/ **William M. Wunderlich**
                                                    UNITED STATES MAGISTRATE JUDGE