1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  ANTHONY KEEL,                          CASE NO. 1:08-cv-00242-OWW-SKO PC

10              Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING THAT DEFENDANT'S
11      v.                               MOTION TO DISMISS BE GRANTED

12  A. HEDGPETH, et al.,                 (Doc. 53)

13              Defendants.              OBJECTIONS DUE WITHIN THIRTY DAYS
    _____/
14

15      Plaintiff Anthony Keel ("Plaintiff") is a state prisoner proceeding pro se and in forma

16  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On October 14, 2009, Defendant

17  Chris Chrones filed a motion to dismiss on the grounds that Plaintiff failed to exhaust his

18  administrative remedies prior to filing suit and that Plaintiff's first amended complaint fails to state

19  a claim upon which relief can be granted.  (Doc. #53.)  On October 29, 2009, Plaintiff filed an

20  opposition to Defendant's motion.  (Doc. #55.)  On November 13, 2009, Defendant filed a reply to

21  Plaintiff's opposition.  (Doc. #57.)

22      On January 13, 2010, Plaintiff filed a document entitled "Motion to Return Three Exhibits

23  Back to the Court as Genuine Facts with the of [sic] Seven Exhibits [sic] that the Court have in its

24  Possession.  And Motion to Submit Exhibit(m)."  (Doc. #63.)  On January 20, 2010, Defendant filed

25  a motion to strike the document, construing it as a surreply.  (Doc. #64.)  However, Plaintiff's

26  ///

27  ///

28  ///

1

1    January 13, 2010 filing appears to be a separate motion unrelated to Defendant's motion to dismiss.[1]

2    Thus, the Court will not consider any of the arguments or allegations raised in the January 13, 2010

3    filing in resolving Defendant's motion to dismiss.

4    **I.    Background**

5         **A.    Plaintiff's Complaint**

6         Plaintiff claims that prison officials at Kern Valley State Prison ("KVSP") violated his

7    constitutional rights.  Plaintiff claims that Defendant Wash found an administrative grievance in

8    Plaintiff's cell that accused Wash of discriminating against Plaintiff.  Plaintiff alleges that Wash

9    arranged for other inmates to attack Plaintiff in retaliation for the administrative grievance.  Plaintiff

10   also alleges that Defendant Burrows participated in the attack because Burrows watched the attack

11   take place without intervening.  Plaintiff also alleges that Burrows did not allow medical staff to treat

12   Plaintiff by directing them to go elsewhere in an attempt to cover up the attack.  Plaintiff claims that

13   Defendant Chris Chrones ignored a threat to Plaintiff's safety by denying Plaintiff's request for a

14   transfer or placement in protective custody.  Plaintiff requested the transfer because he felt threatened

15   by Wash and Burrows.  Plaintiff claims that instead of granting the request, Chrones placed Plaintiff

16   in the D-Facility Yard where Plaintiff was stabbed by Mexican inmates.

17        On February 18, 2010, the Court dismissed Defendants Burrows and Wash pursuant to

18   Federal Rule of Civil Procedure 4(m) because Plaintiff failed to effect service of process on them.

19   (Doc. #69.)  The U.S. Marshal was directed to serve Burrows and Wash with a summons and a copy

20   of Plaintiff's complaint.  However, the U.S. Marshal was unable to effect service of process using

21   the information provided by Plaintiff.  Thus, this action proceeds only on Plaintiff's claims against

22   Defendant Chrones.

23   ///

24   ///

25

26        [1] Although Plaintiff's January 13, 2010 filing is largely incomprehensible, Defendant's characterization of it
     as a surreply appears to be erroneous.  Plaintiff has styled the filing as a motion and it requests that the Court "add on
27   another million to the other 2 million Plaintiff is suing [Chrones] for, and hold A. Hedgpeth et al. and warden Darrel
     Adams at CSP liable for deliberate indifferent toward threats and safety in retatory[sic] action against Plaintiff, sued
28   in their individual capacity."

1          **B.    Defendant's Motion to Dismiss**

2          Defendant argues that he is entitled to dismissal because Plaintiff failed to exhaust his

3   administrative remedies prior to filing this action.   Defendant also argues that he is entitled to

4   dismissal of this action under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's complaint

5   fails to state a claim upon which relief can be granted.

6          Defendant argues that the Prison Litigation Reform Act ("PLRA") requires Plaintiff to

7   exhaust all administrative remedies prior to filing a lawsuit concerning prison life.  (Def.'s Notice

8   of Mot. and Mot. to Dismiss; Supporting Mem. of P. & A. 4:18-22.)  Defendant claims that Plaintiff

9   "has not filed any administrative grievance, which was accepted for review, regarding his claim that

10  Officer Chrones failed to protect him in violation of the Eighth Amendment." (Mot. to Dismiss 6:7-

11  9.)

12         Defendant also argues that the allegations in the complaint fail to state a claim under the

13  Eighth Amendment.  (Mot. to Dismiss 6:14-9:21.)  Defendant argues that in order to state an Eighth

14  Amendment claim, Plaintiff must allege facts that show that Defendant acted with deliberate

15  indifference. (Mot. to Dismiss 8:3-25.) Defendant contends that Plaintiff's complaint fails to allege

16  sufficient facts to establish that Chrones acted with deliberate indifference because there are no

17  allegations that show that Chrones actually knew of and/or disregarded any "then-current risk to

18  [Plaintiff's] safety." (Mot. to Dismiss 8:26-9:1.)

19         Defendant argues that Plaintiff had previously complained to Chrones about the problems

20  he had with Wash and Burrows on B-Facility.  (Mot. to Dismiss 9:5-7.)  However, Defendant argues

21  that Plaintiff's complaints about the incidents on B-Facility would not have alerted Chrones about

22  any threat on D-Facility.  (Mot. to Dismiss 9:5-7.)   Thus, Defendant argues that there are no

23  allegations that suggest that Chrones was aware that D-Facility was unsafe for Plaintiff.  (Mot. to

24  Dismiss 9:8-10.)  Further, Defendant argues that Plaintiff has not alleged any facts that suggest the

25  December stabbing on D-Facility was in any way related to the August 2007 incidents on B-Facility.

26  (Mot. to Dismiss 9:11-13.) Defendants contend that the stabbing on D-Facility was wholly unrelated

27  to the B-Facility incidents because the stabbing took place three months after Plaintiff's transfer, it

28  occurred during a race riot involving all yards on D-Facility, it followed a three-month lock down

of black and white inmates, and other black inmates were also stabbed.  (Mot. to Dismiss 9:13-18.)

### C.   **Plaintiff's Opposition**

On October 29, 2009, Plaintiff filed a document entitled "Declaration of N. Grannis in Support of Defendants' Motion to Dismiss.  Plaintiff Motion is Opposition is[sic] to have Defendants Liable."  (Doc. #55.)  Plaintiff's filing is construed as an opposition to Defendant's motion to dismiss.  Plaintiff's opposition is unintelligible.

Plaintiff states "Defendant Chris Chrones, you got it right, that when Plaintiff requested a transfer or protective custody, it came with an appeal."  (Opp'n 1.)  Plaintiff also claims that "[Plaintiff's] voice is on audio tape at your committee hearing, one week away from August (illegible), verbally or on writing."  (Opp'n 1.)  Plaintiff appears to claim that his appearance at the committee hearing constituted an "appeal for relief."  (Opp'n 1.)

Plaintiff's opposition identifies the inmates who attacked him and claims that "the stabbing Plaintiff got on D-1 Facility Yard (illegible) related or not, Plaintiff wasn't not[sic] suppose[sic] to be on that yard or sent back into (illegible) such as D-Facility Yard to answer to cripts, bloods, and 415 inmates."  (Opp'n 1.)  Plaintiff claims that he was stabbed "in a black area of the yard that's selected by prison officials."  (Opp'n 1.)  Plaintiff claims that "correctional officers isn't[sic] no dummies when it comes to inmates being assaulted by other inmates and when Lieutenant placed me in ad-seg you knew why Plaintiff were[sic] here for.  But, Defendant Chris, you knew what facility yard to be placed on there therefore you acted with deliberate indifference."  (Opp'n 1.)  Plaintiff claims that Chrones did not grant Plaintiff's request for a transfer "because it would be like an admission of 'guilt.'"  (Opp'n 1.)

Plaintiff makes further unintelligible arguments regarding his attempts to appeal.  Plaintiff makes vague references to property that he sent to "this address" because he "didn't have funds."  (Opp'n 2.)  The ambiguous reference to "this address" is later clarified as "this address is the mother of my witness Shaq in 2-01 eight building eight facility."  (Opp'n 2.)  Plaintiff claims he could not "choose or pick the property I needed" and that he "believe[s] that's where my 602 complaints went against Wash and Burrows."  (Opp'n 2.)  Plaintiff claims that "these 602's shows I made a good faith effort but they appeals[sic] didn't."  (Opp'n 2.)  Plaintiff refers to an attached exhibit entitled

"Plaintiff Motion to Respond on Finding and Recommendation on Recommending Denial of Motions" to his opposition. The document is barely legible and unintelligible. It appears to describe some sort of lock-down and contains complaints about warden Hedgpeth, who is not a party to this action. It is unclear how the document is relevant to opposing Defendant's motion to dismiss.

### D.     **Defendant's Reply**

In its reply, Defendant argues that Plaintiff failed to properly exhaust his administrative remedies. Defendant notes that Plaintiff's complaint makes reference to an administrative grievance that was screened out "because it did not meet the minimum requirements." (Reply in Supp. of Def.'s Mot. to Dismiss 2:8-10.) Defendant argues that the screened out appeal does not constitute proper exhaustion of Plaintiff's administrative remedies. (Reply 2:3-12.) Defendant further argues that Plaintiff's unintelligible references to an April 2008 grievance are not sufficient to demonstrate exhaustion because there is no indication that the grievance concerns the claims in this action and the April 2008 grievance was submitted after Plaintiff filed the complaint in this action. (Reply 2:17-3:4.) Defendant further argues that Plaintiff's opposition fails to address the issue of whether his complaint alleges facts that demonstrate that Chrones was actually aware of any risk to Plaintiff's safety on D-Facility at that time. (Reply 4:12-15.)

## II.    **Discussion**

Defendant argues that he is entitled to dismissal of this action because Plaintiff failed to exhaust his administrative remedies prior to filing suit. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." Id. at 90-91. The proper exhaustion requirement serves two important purposes: 1) it gives an agency the opportunity to correct its own mistakes before it is brought into federal court and discourages disregard of the agency's procedures; and 2) it promotes efficiency

1  because claims can be resolved much more quickly and economically in proceedings before an

2  agency than in litigation in federal court. Id. at 89.

3       Prisoners must complete the prison's administrative process, regardless of the relief sought

4  by the prisoner and regardless of the relief offered by the process, as long as the administrative

5  process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741

6  (2001). Thus, prisoners cannot evade the exhaustion requirement by limiting their request for relief

7  to forms of relief that are not offered through administrative grievance mechanisms. Id. (prisoners

8  cannot skip administrative process by simply limiting prayers for relief to money damages not

9  offered through administrative grievance mechanisms). Further, prisoners may not cease pursuing

10 administrative appeals simply because the appeal process does not offer the form of relief that they

11 seek. "All 'available' remedies must now be exhausted; those remedies need not meet federal

12 standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citing Booth v.

13 Churner, 532 U.S. 731, 739 n.5 (2001)). However, "a prisoner need not press on to exhaust further

14 levels of review once he has either received all 'available' remedies at an intermediate level of

15 review or been reliably informed by an administrator that no remedies are available." Brown v.

16 Valoff, 422 F.3d 926 (9th Cir. 2005).

17      Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

18 defense  which Defendants have the burden of raising and proving. Wyatt v. Terhune, 315 F.3d

19 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not

20 jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment

21 motion. Id. at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365,

22 368 (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust

23 administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact.

24 Id. at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies,

25 the proper remedy is dismissal without prejudice. Id.

26      Defendant argues that there are no records of any administrative grievances or appeals filed

27 by Plaintiff that concern his claims against Defendant Chrones. Defendant submitted a declaration

28 from N. Grannis, the Chief of the Inmate Appeals Branch, that indicates that no appeals have been

found concerning any of the claims raised in Plaintiff's complaint.  (Decl. of N. Grannis in Supp. of Def.'s Mot. to Dismiss 2:8-14.)  Defendant also submitted a declaration from D. Tarnoff, an appeals coordinator at KVSP, that also indicates that no appeals have been found regarding the claims raised in Plaintiff's complaint.  (Decl. of D. Tarnoff in Supp. of Def.'s Mot. to Dismiss 2:6-12.)

Plaintiff fails to persuasively oppose Defendant's claim regarding Plaintiff's failure to exhaust his administrative remedies.  Plaintiff's opposition is vague and difficult to comprehend. Plaintiff states that "[m]y voice is on audio tape at your committee hearing, one week away from August (illegible).  Verbally or on writing, it's an appeal for relief."  To the extent that Plaintiff is arguing that his "voice" at the committee hearing constitutes exhaustion of his administrative remedies, Plaintiff's argument fails.  The PLRA's exhaustion requirement requires proper exhaustion, which requires "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90-91.  The regulations cited by Defendant indicate that the "critical procedural rules" include filing an appeal using the required form and presenting the allegations at one informal and three formal levels of review.  (Mot. to Dismiss 5:2-9.)  Plaintiff's "voice" at the committee hearing does not comply with the procedural rules for submitting an appeal at KVSP.

Plaintiff's opposition also contains confusing allegations regarding Plaintiff's lack of funds and 602 appeals being sent to "the mother of my witness Shaq."  Plaintiff's confusing allegations fail to rebut Defendant's showing that Plaintiff failed to properly exhaust his administrative remedies.  Plaintiff provides no explanation as to why he needs "funds" to file an administrative appeal.  Nor is there any clear explanation as to why Plaintiff sent 602 appeals to Shaq's mother instead of filing them with the proper authorities at KVSP.  The Court finds that Plaintiff failed to exhaust his administrative remedies for the claims raised in this action.

Because the Court finds that Defendant is entitled to dismissal due to Plaintiff's failure to exhaust his administrative remedies prior to filing suit, the Court declines to address Defendant's arguments regarding Plaintiff's failure to state a claim.

**III.    Conclusion and Recommendation**

The Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Accordingly, it is HEREBY RECOMMENDED that Defendant's motion to dismiss, filed on

1  October 14, 2009, be GRANTED.

2       These Findings and Recommendations are submitted to the United States District Judge

3  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30)

4  days after being served with these Findings and Recommendations, any party may file written

5  objections with the Court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7  shall be served and filed within ten (10) days after service of the objections.  The parties are advised

8  that failure to file objections within the specified time may waive the right to appeal the District

9  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11  IT IS SO ORDERED.

12  **Dated:    June 15, 2010**                    **/s/ Sheila K. Oberto**
                                             UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28